**William A. PASCARELL, Regional Director of Region 22 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**ORIT CORPORATION/SEA JET TRUCKING and APA Warehouses, Inc., Single and Joint Employers d/b/a Gitano Distribution Center, Respondent.**

Civ. A. No. 88–2068.

United States District Court,
D. New Jersey.

May 31, 1988.

As Amended Feb. 22, 1989.

Marguerite R. Greenfield, N.L.R.B., Newark, N.J., for petitioner.

Sanford E. Pollack, Pollack & Kirshenbaum, P.C., Valley Stream, N.Y., for respondent.

## OPINION

WOLIN, District Judge.

This matter is currently before the Court on a petition filed by the Regional Director of Region 22 of the National Labor Relations Board (the "NLRB"), pursuant to § 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j), for a temporary injunction pending the final disposition of this action. The filing of this petition follows the issuance of an unfair labor practice complaint pursuant to § 10(b) of the National Labor Relations Act, upon charges filed by United Automobile, Aerospace & Agriculture Implement Workers of America, AFL–CIO (the "Union") on December 7, 1987, alleging that Orit Corporation/Sea Jet Trucking and APA Warehouses, Inc., single and joint employer d/b/a Gitano Distribution Center (respondent) has engaged in, and is engaging in various unfair labor practices within the meaning of § 8(a)(1) and (3) of the National Labor Relations Act. In particular, the complaint alleges that employees of respondent have engaged in an unfair labor practice strike to protest respondent's discriminatory discipline and discharge of two employees, various independent violations of § 8(a)(1) of the National Labor Relations Act, respondents' failure to provide requested informa-

tion relevant to the Union, and its failure to bargain with the Union, the certified collective bargaining representative of its employees.

Subsequent to the filing of the complaint, the parties entered into a settlement agreement on March 29, 1988 in relation to the discipline and discharge allegations as well as the independent violations of § 8(a)(1). The settlement agreement was entered into without prejudice to either side and clearly indicated that respondent did not admit that it had violated the National Labor Relations Act, as amended, by entering into such agreement. (See, Exhibit A attached to Pollack Affidavit.)

Thereafter, on April 14, 1988 at a hearing before the Honorable Harold B. Lawrence, A.L.J., the respondent, pursuant to its settlement agreement, withdrew its denials of all but the reinstatement allegations contained in the complaint[1] and the parties entered into various factual stipulations. Judge Lawrence ordered briefs to be submitted by May 17, 1988.

On May 9, 1988 the NLRB authorized the petitioner to seek injunctive relief pursuant to § 10(j). This petition followed.

## DISCUSSION

On a petition for injunctive relief pursuant to § 10(j) of the National Labor Relations Act, a federal court must determine whether "reasonable cause" exists to believe an unfair labor practice has occurred and whether the specific relief sought is "just and proper". *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076 (3d Cir.1984). Unlike the ordinary requisites for a preliminary injunction, there is no need to show irreparable harm and a likelihood of success on the merits. *Id.* Indeed, the Third Circuit has stated that the necessary standard on an application for injunctive relief pursuant to § 10(j) involves a relatively "low threshold of proof". *Eisenberger v. Wellington Hall Nursing Home*, 651 F.2d 902, 905 (3d Cir.1981). See also

*Kobell, supra,* 731 F.2d at 1084 (standard is "relatively insubstantial").

In determining whether "reasonable cause" exists to believe that an unfair labor practice has occurred, a district court should be mindful that it may not act as though it has general jurisdiction over the nation's labor laws and may not decide whether or not to issue relief based upon its own belief as to whether an unfair labor practice has been committed. *Kobell*, 731 F.2d at 1083. Moreover, the district court "need not be satisfied with the 'validity of the legal theory upon which [the Regional Director] predicated his charges,' so long as the legal theory proffered is 'substantial and not frivolous'...." *Id.* at 1084, quoting from *Hirsch v. Building and Construction Trades Council*, 530 F.2d 298 (3d Cir.1976).

The determination that the relief sought is "just and proper" requires a finding by the court that "it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board." *Eisenberg v. Lenape Properties, Inc.*, 781 F.2d 999, 1003 (3d Cir.1986) (citations omitted); *accord, Kobell v. Menard Fiberglass Products, Inc.*, 678 F.Supp. 1155, 1164 (W.D.Pa.1988). Moreover, the Third Circuit has instructed district courts to "discuss and determine whether the failure to grant interim injunctive relief would be likely to prevent the Board, acting with reasonable expedition, from effectively exercising its ultimate remedial powers." *Kobell*, 731 F.2d at 1091–92.

Petitioner contends that reasonable cause to believe that the National Labor Relations Act has been violated and that § 10(j) injunctive relief is just and proper can be found by a review of the administrative record compiled on April 14, 1988. In contrast, respondent asserts that neither "reasonable cause" to believe that an unfair labor practice has occurred nor proof that imposition of an injunction by this

1. Respondent specifically expressed its denial of the allegations contained within paragraphs 33(a), (b), (c) and (d), 34 and portions of 36 and 38 dealing with paragraphs 33 and 34. The allegations in these paragraphs stem from actions which occurred following the striking union members' unconditional offer to return to their former work positions.

Court would be "just and proper" has been shown by petitioner or evidenced by the administrative record. Because as set forth below this Court is more persuaded by the arguments of petitioner, interim injunctive relief shall be granted.

While a review of the administrative record clearly indicates that respondent has preserved its non-admissions in regard to the alleged conduct constituting violations of § 8(a)(1) and (3), respondent has in fact stipulated before the administrative law judge and before this Court that an unfair labor practice strike commenced on November 8, 1987.[2] Moreover, the parties agree that on December 4, 1987 respondent was advised of the Union's decision to "terminate, unconditionally, the strike at Orit Corporation's Edison, New Jersey facility" and to have its members return to work on December 7, 1987. It is respondent's alleged conduct thereafter that the parties currently debate.

▆▆▆ Upon receipt of an unconditional request for reinstatement, an employer is required to reinstate unfair labor practice strikers to their former positions of employment or if such jobs no longer exist, to substantially equivalent positions. *Pecheur Lozenge Co.*, 98 NLRB 496, 498 (1952) enf. as modified 209 F.2d 393 (2d Cir.1953), *cert. denied*, 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1099 (1954); *Levanthal v. Car–Riv. Corp.*, 96 CRRM 2899 (E.D.Pa.1977). Further, the burden is on the employer to offer immediate and unconditional reinstatement even if the employer has hired permanent replacements, and even if those replacements must be discharged to make room for returning strikers. *Atlas Metal Parts, Inc.*, 252 NLRB 205 (1980); see *Mastro Plastics v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956); *NLRB v. Cast Optics Corp.*, 458 F.2d 398, 407 (3d Cir.1972), *cert. denied*, 409 U.S. 850, 93 S.Ct. 58, 34 L.Ed.2d 92; *NLRB v. Clearfield Cheese Co.*, 213 F.2d 70 (3d Cir.1954).

On December 7, 1987 approximately 90 former striking employees arrived at respondent's warehouse where they were greeted by respondent's manager, Mr. Barry Becken. Becken took the names of all employees who were present and proceeded to begin the process of reinstating such employees to the workforce. In total, however, only 27 employees were offered immediate reinstatement. The remaining individuals were advised to await further contact from respondent.[3]

While it appears that 16 additional employees were offered reinstatement within the next four work days, respondent still had not discharged any of its striker replacements, nor offered several of the strike captains reinstatements by December 11, 1987.

On December 11, 1987, despite not having offered reinstatement to many of the employees who had returned to work on December 7, 1987, respondent sent out mailgrams to thirty individuals who allegedly failed to report to work on December 7, 1987 which stated:

> You were to report to work on Monday, December 7, 1987. You did not. If we do not hear from you within forty-eight (48) hours, we will assume you abandoned your job.

In addition, on December 18, 1987, respondent sent out mailgrams to twelve individuals who had prior to the strike been employees of respondent's Edison facility, informing them that work was available in respondent's Brooklyn warehouse and asking them to report to work on Monday, December 21, 1987. One employee reported to work at the Brooklyn facility. The remaining eleven employees received a second mailgram from respondent on December 28 stating:

> Last week you were notified that work was available for you at APA Warehouse, 140 43rd Street, Brooklyn, New York 11232 commencing Monday, December 21, 1987 at 9:00 a.m.

---

**2.** An unfair labor practice strike is a concerted refusal to work in whole or in part in response to an employer's unfair labor practices.

**3.** There is no doubt that the strikers were not reinstated in order of seniority. However, no allegation is made by petitioner that such in and of itself constituted a violation of the National Labor Relations Act.

You did not report to work and Jack Klein did not receive any phone calls from you.

If you do not report to work or call Jack Klein within 48 hours, it will be assumed you have abandoned your job.

Respondent made this offer at a time when the Brooklyn employees were continuing their strike. Moreover, four of the twelve employees offered reinstatement at the Brooklyn facility had served as picket captains during the strike at the Edison facility.

 A review of the above facts which occurred following the union's unconditional offer to terminate the strike and return to the workforce convinces this Court that there is "reasonable cause" to believe that respondent failed to offer many unfair labor practice strikers immediate reinstatement to their former positions or substantially equivalent positions, and thus violated the National Labor Relations Act. In concluding such, this Court is mindful that an employer may need some time to accomplish an orderly return of its employees to the workplace; yet, in this instance it is readily apparent that to date respondent has failed to discharge many of its replacement employees, delayed the reinstatement of at least 23 strikers in excess of a week, and has, in fact, continued to refuse to reinstate several of its original employees who participated in the strike claiming that they waived their right to reinstatement. An employee does not, however, waive his right to reinstatement by failing to respond to an invalid offer. *Woodbine Motor Freight*, 278 NLRB 1141, 1143, n. 5 (1986). This Court has "reasonable cause" to believe that the offer of reinstatement at the Brooklyn facility to the former Edison employees is not a valid offer of reinstatement.

Furthermore, this Court concludes that the relief sought by the petitioner in this instance is "just and proper". Petitioner presents this Court with "the basic theory . . . that denial of reinstatement effectively denies employees the fruits of the collective bargaining process that otherwise would be available to them prior to ultimate reinstatement." *Kobell*, 731 F.2d at 1093. Specifically, petitioner contends that the reinstatement of approximately 45 strikers is vital if the Union is ever going to realize the benefits of collective bargaining for respondent's employees. In addition, petitioner asserts that since respondent "flaunted its disregard" for the NLRB and its employees by its "ultimatum to eleven strikers to cross a picket line at its Brooklyn facility," injunctive relief is necessary to protect the integrity of the collective bargaining process.

This Court agrees with petitioner's contentions that if these Union supporters are excluded from the bargaining process pending resolution of unfair labor practice charges before the NLRB, many of the supporters will lose confidence in the Union's ability to come to their aid. Moreover, whereas here, the Union is involved in an organization drive, § 10(j) relief is especially appropriate to prevent further employer interference and discharge of additional Union-supporting employees. *See e.g. Eisenberg v. Ward Products*, Civil No. 77–1477 (D.N.J.1977) (Fisher, J.); *Eisenberg v. Honeycomb Plastics Corp.*, 125 LRRM 3257 (D.N.J.1987) (Ackerman, J.). The Third Circuit has in fact indicated that in similar situations there is a "presumption . . . that ultimate reinstatement is unlikely to vindicate the remedial powers of the Board." *Kobell*, 731 F.2d at 1093, discussing the holding in *Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902 (3d Cir.1981). For example, in this instance, absent injunctive relief, by the time the Board renders its decision,[4] several employees may be forced to accept employment elsewhere [5] and will therefore be unable or unwilling to return to their former jobs should reinstatement be ordered. Similarly, the manipulation of Union leadership through offers to strike captains for reinstatement at foreign locations greatly re-

---

4. This Court has been informed that a decision from the Board in connection with this matter cannot be expected for at least one month.

5. Respondent's employees are generally lower to middle income individuals.

duces employees confidence in the Union leaders' ability to challenge their employer. The Board's order would therefore come too late to have any meaningful effect to these people.

Accordingly, injunctive relief is just and proper in this instance because the failure to grant such may irreparably harm the organizational efforts of the Union at respondent's Edison facility and the strength of the employees' confidence in the collective bargaining process.

Finally, this Court notes that contrary to respondent's assertions, the efficacy of interim relief pursuant to § 10(j) of the Act has not been rendered meaningless by the time taken by petitioner to file this petition. Given the statutory and regulatory framework within which the Board must operate,[6] there has been no showing of undue delay which would outweigh the need for interim relief in order to prevent the dissipation of the Union's support group. Indeed, § 10(j) relief has been sought and granted in this circuit under circumstances with similar time frames. *See, e.g., Eisenberg v. Hunter Douglas, Inc.* (Civil Action No. 85–1066) (relief granted in part) (4 month, 6 day delay); *Kobell v. Menard, et al.,* 678 F.Supp. 1155 (W.D.Pa.1988) (over 5 month delay). Because a final Board order is not immediately forthcoming, interim injunctive relief will still serve petitioner's interests. Moreover, to deny injunctive relief in this instance would only serve to further respondent's alleged violations and would not give effect to the purposes of the Act. Injunctive relief is clearly necessary here to "preserve the integrity of the collective bargaining process." *See, Eisenberg v. Wellington Hall Nursing Home, supra,* 651 F.2d at 902. Thus, petitioner's application is hereby granted.

---

**6.** Certain delays in filing a § 10(j) petition are inherent and unavoidable. For example, a Regional Director is required to give priority to § 10(*l*) charges, then § 8(a)(3) or § 8(b)(2) charges and then finally § 10(j) cases. Moreover, the petitioner must await the Regional Director's full investigation of the charges and get authorization from the Board before proceeding with its application for injunctive relief.